**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

CHRISTINE K.,[1]

Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of Social Security,[2]

Defendant.

Case No.: 3:25-cv-01206-JO-VET

**REPORT AND RECCOMMENDATION FOR REMAND FOR FURTHER PROCEEDINGS**

This Report and Recommendation is submitted to United States District Court Judge Jinsook Ohta pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1.

## I. INTRODUCTION

On May 12, 2025, Plaintiff Christine K. brought this action challenging Defendant Commissioner's ("Commissioner") final decision, dated May 1, 2024, denying Plaintiff's application for disability insurance benefits ("Final Decision"). ECF No. 1. Before the Court is Plaintiff's opening brief and Defendant's responsive brief. *See* ECF Nos. 11, 15.

[1] Partially redacted in compliance with Civil Local Rule 7.1(e)(6)(b).

[2] Frank J. Bisignano, Commissioner of the Social Security Administration, is automatically substituted for Leland Dudek pursuant to Fed. R. Civ. P. 25(d).

Having considered the parties' arguments, applicable law, and the record before it, and for the reasons discussed below, this Court **RECOMMENDS VACATING** the Commissioner's Final Decision and **REMANDING** for further administrative proceedings consistent with this Order.

## II. BACKGROUND

### A. Procedural History

On October 22, 2013, Plaintiff applied for disability insurance benefits pursuant to the Social Security Act, alleging disability commencing on April 15, 2012. Administrative Record ("AR") 384–85.[3] Plaintiff's application moved through the administrative appeals process and Administrative Law Judges ("ALJ") reviewed the application on four separate occasions. AR 18–36, 161–176, 182–199, 1759–82. Each time, the ALJ found that Plaintiff was not disabled. AR 18–36, 161–176, 182–199, 1759–82.

Plaintiff timely appealed the fourth ALJ's decision, requesting review by the Appeals Council. AR 1929. On March 13, 2025, the Appeals Council declined to assume jurisdiction, at which time the ALJ's decision became the Commissioner's Final Decision. AR 1748–52; 42 U.S.C. § 405(h). On May 12, 2025, Plaintiff initiated this action seeking judicial review of the Final Decision. ECF No. 1.

### B. Summary of the ALJ's Decision

The ALJ followed the agency's five-step sequential evaluation process to determine whether Plaintiff is disabled. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determined that Plaintiff did "not engage in substantial gainful activity during the period from her alleged onset date of April 15, 2012, through her date last insured of December

[3] The AR is electronically filed at ECF No. 8.

31, 2013."[4] AR 1764. At step two, the ALJ found that Plaintiff had the following severe impairments: "adhesive capsulitis of bilateral shoulders; chondromalacia patella of left knee; status-post closed head injury with subarachnoid hemorrhage; status-post cervical spine injury with articular facet fractures at C6 and C7; status-post open fracture of the left tibia and fibula; status-post closed fracture of the left humerus; status-post closed fracture of the right greater tuberosity; and status-post closed fractures of the right 5th metacarpal." AR 1764–65. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to those in the Commissioner's Listing of Impairments. AR 1765. Before proceeding to step four, the ALJ assessed Plaintiff's Residual Functional Capacity ("RFC") and further concluded that she has the RFC to:

> [P]erform light work . . . except can occasionally climb ramps and stairs, never climb of ladders, ropes, scaffolds, and frequently balance, occasionally stoop, and kneel, never crouch and crawl; can only occasionally reach overhead with bilateral upper extremities, but frequently reaching all other directions with bilateral upper extremities; would be limited to frequent handling and fingering bilateral upper extremities; and occasional operation of foot controls with bilateral lower extremities; the individual must avoid concentrated exposure to vibration and to hazards such as operational control of moving machinery and unprotected heights.

AR 1765–66. The ALJ further found that although Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." AR 1767.

---

[4] The "date last insured" refers to "the last day of the quarter a claimant[] meets insured status for disability or blindness." U.S. Soc. Sec. Admin., DI 25501.320, Program Operations Manual System (2015).

At step four, the ALJ found Plaintiff had past relevant work as an accounting clerk and, relying on the testimony of a vocational expert ("VE"), she was able to perform the work of an accounting clerk. AR 1772. At step five, the ALJ made alterative findings. AR 1772. Based on the VE's testimony, the ALJ concluded that Plaintiff could also perform other work existing in significant numbers in the national economy. AR 1773. The VE identified the following three representative occupations that an individual with Plaintiff's age, education, work experience, and RFC could perform: cleaner, maker, and assembler. AR 1773. As such, the ALJ determined that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. AR 1773.

Accordingly, the ALJ found that Plaintiff was not disabled, as defined by the Social Security Act, at any time from April 15, 2012, the alleged onset date, through December 31, 2013, the date last insured. AR 1773.

**C. <u>Summary of Plaintiff's Testimony</u>**

On December 15, 2023, the ALJ held a hearing on Plaintiff's application for disability insurance benefits. AR 1783–1822 ("2023 ALJ Hearing"). Plaintiff's alleged disability onset date was the date of a motorcycle accident on April 15, 2012, when she suffered injuries as a passenger on the motorcycle. AR 1790. Plaintiff testified that her immediate injuries included a closed head injury, cervical spine injury, fractured left humerus, fractured left tibia, fractured left fibula, fractured right shoulder, and fractured right humeral head. AR 1790–91. Some residual symptoms from the accident included numbness in her left leg that affects her ability to walk, poor vision, limited mobility in her upper extremities, and occasional numbness in her hands. AR 1791–96.

Plaintiff also testified that she loses feeling in her left leg when she stands, walks, or lays down for long periods of time. AR 1791, 1798. At home, she holds on to walls and counters to assist her with walking. AR 1792. Outside of the home, she walks with the assistance of her husband. AR 1792. Plaintiff takes medication for the pain and numbness in her left leg. AR 1795. She further testified that as she recovered from the accident, she had limits in her upper extremities in that she could not lift her arms above shoulder height,

and she had problems reaching for items in front of her. AR 1796, 1805. It was still the case that she had trouble reaching overhead. AR 1796. She can only lift around five pounds. AR 1805.

Additionally, Plaintiff testified that she is nearsighted and has difficulty seeing long distances, maybe 10 to 20 feet with corrective lenses. AR 1793. Using her near acuity vision causes her to strain her eyes which leads to headaches. AR 1802. Her vision impairments started in 2012, before the motorcycle accident, and continued to worsen. AR 1792–94.

Plaintiff also testified that since 2012, she relies on her husband to prepare meals and do errands such as shop for groceries. AR 1798–99. Between 2012 and 2013, she was able to do chores "[j]ust a little bit," which included washing dishes for five or ten minutes. AR 1799. As of the 2023 ALJ Hearing, she spent her time caring for her dog and watching television. AR 1799–1800, 1808–10. When watching television, she wore glasses, positioned her computer tablet at arm's length, and took breaks every five to ten minutes due to her eyes hurting and headaches. AR 1813–14.

## III. STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation modified); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (substantial evidence is "more than a mere scintilla, but less than a preponderance"). A court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

The Court may not impose its own reasoning to affirm the ALJ's decision. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation modified). Thus, "review of an ALJ's fact-finding for substantial evidence is deferential, and the threshold for such evidentiary sufficiency is not high." *Ford*, 950 F.3d at 1159 (citation modified); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) ("Overall, the standard of review is highly deferential.").

Lastly, the Court will not reverse for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "An error is harmless only if it is inconsequential to the ultimate nondisability determination." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citation modified).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ improperly rejected Plaintiff's subjective testimony regarding her debilitating symptoms and (2) whether the ALJ improperly discounted the medical opinions by Russell Edwards, M.D. and Frederick Close, M.D. *See generally* ECF No. 11. The Court addresses each in turn.

### A. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ erroneously rejected Plaintiff's subjective testimony regarding her functional limitations and improperly relied on activities of daily living and evidence of recovery. ECF No. 11 at 7, 11. The Commissioner contends that the ALJ properly rejected Plaintiff's subjective complaints related to her symptoms because they were not entirely consistent with the overall record, including objective medical evidence showing improvement in Plaintiff's symptoms. ECF No. 15 at 2–3. Based on a review of the Final Decision and the record, the Court finds that substantial evidence does not support the ALJ's decision to reject Plaintiff's testimony.

1. Legal Standards Regarding Subjective Testimony

The ALJ is solely responsible for "determin[ing] credibility, resolv[ing] conflicts in the testimony, and resolv[ing] ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary") (citation modified). Determining whether a claimant's subjective symptom testimony is credible involves a two-step analysis. *Lingenfelter*, 504 F.3d. at 1035–36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citation modified). As part of this analysis, "the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (citation modified). "Nor must a claimant produce objective medical evidence of the [symptom] itself, or the severity thereof." *Id.* (citation modified). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (citation modified).

"This is not an easy requirement to meet: [t]he clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1015 (citation modified). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation modified). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough

that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (citation modified). The ALJ also may consider Plaintiff's daily activities when making credibility determinations. *See e.g.*, *Diedrich v. Berryhill*, 874 F.3d 634, 648 (9th Cir. 2017); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (listing daily activities as a factor the ALJ considers in determining the nature and severity of claimant's symptoms). However, only if the level of activity is inconsistent with a claimant's claimed limitations do such activities have any bearing on a claimant's credibility. *Reddick*, 157 F.3d at 722.

"Ultimately, the clear and convincing standard requires an ALJ to show his work." *Smartt*, 53 F.4th at 499 (citation modified). "A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492. "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199. But where the ALJ's credibility determination is adequately supported, this Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. "[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter*, 806 F.3d at 494.

2. <u>Evaluation of Plaintiff's Subjective Testimony</u>

There is no evidence or finding of malingering. *See generally* AR 1759–73. And the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." AR 1767. However, the ALJ rejected Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms as inconsistent with the record. AR 1767. Accordingly, the ALJ was required to articulate specific, clear, and convincing reasons to support rejecting Plaintiff's testimony.

Here, the ALJ relied on the following to reject Plaintiff's testimony: (1) an Exertional Questionnaire, dated November 14, 2013, wherein Plaintiff self-reported certain physical abilities and limitations ("Exertional Questionnaire"); (2) Plaintiff's testimony at a July 14, 2016 ALJ hearing ("2016 ALJ Hearing"); and (3) medical evidence related to Plaintiff's recovery. AR 1767–69. The Court turns to evaluating the ALJ's findings and the testimony at issue.

*a. Exertional Questionnaire*

The ALJ discounted Plaintiff's subjective testimony based on the Exertional Questionnaire because it "reports a physical functional capacity that is not entirely consistent with disabling functional limitations." AR 1769. As an example, the ALJ highlighted that Plaintiff "reported being able to perform chores, including laundry twice per week, do dishes for one half hour, vacuuming for one-half hour, and sweeping for 10 minutes." AR 1769; *see also* AR 483–88. The ALJ concluded that "these activities of daily living are not entirely consistent with the allegations of disabling symptoms and limitations." AR 1769. Further, because the Exertional Questionnaire "was completed . . . prior to the expiration of the date last insured," the ALJ characterized it as "likely the most accurate subjective description of the claimant's abilities." AR 1769. However, upon close review of Plaintiff's testimony and the Exertional Questionnaire, none of the purported inconsistencies noted by the ALJ are apparent.

First, other relevant and related evidence in the Exertional Questionnaire shows that Plaintiff's functional capacity is more limited than the ALJ suggests. *See* AR 486. Specifically, Plaintiff reported that she (1) "must take breaks from doing thing [sic] around the house every 5–10 minutes," (2) "try to perform minimal chores during the week but at short intervals of 5–10 minutes," and (3) "must take constant rest." AR 486. These reports are consistent with Plaintiff's testimony that she only had the ability to perform chores continuously for five to fifteen minutes before needing a break. AR 1808–11. Notably, the ALJ also ignored this additional testimony. Thus, Plaintiff has consistently stated that she is able to perform chores but only for short periods of time before needing breaks or rest.

Second, the ALJ ignored the temporal context of Plaintiff's testimony. As noted, the ALJ highlighted Plaintiff's reports in the Exertional Questionnaire that she could perform chores. The ALJ contrasted those reports with Plaintiff's testimony that she could not do chores around the house or prepare meals and could only wash dishes for five or ten minutes. AR 1769; *see also* AR 1798–99. The ALJ determined that these statements were inconsistent. *See* AR 1798–99. Except Plaintiff testified that in 2012 and 2013 she had the ability to wash dishes and vacuum, which is consistent with the Exertional Questionnaire. *See* 1799[5], 1808–09. Then when asked, "what about now, are you able to do *more chores now*," Plaintiff testified "no." AR 1799 (emphasis added). In other words, she was able to do *some* chores in 2012–2013 and was not able to do "more" chores in 2023. *See Id.* This testimony is not inconsistent with the Exertional Questionnaire, where Plaintiff reported, in 2013, being able to perform certain chores. AR 483–88. Therefore, when considering the context of Plaintiff's testimony, the Court finds no inconsistency between Plaintiff's testimony from the 2023 ALJ Hearing and the Exertional Questionnaire.

The ALJ also suggested that an inconsistency exists between Plaintiff's testimony that she could not prepare meals and the Exertional Questionnaire. *See* AR 483–88, 1769. The Court again cannot identify any inconsistency given that none of Plaintiff's testimony regarding preparing meals relates to anything reported in the Exertional Questionnaire. In fact, the Exertional Questionnaire includes no information about Plaintiff's ability to prepare meals. *See* AR 483–88. Moreover, Plaintiff testified that she could not prepare meals in response to the ALJ's inquiries about her abilities "once [she] had gotten out of the hospital and returned home," i.e., April 28, 2012. AR 609, 1667–68, 1798–1799. She

---

[5] The Court notes that at the 2023 ALJ Hearing when Plaintiff was asked about the types of chores she was able to do in 2012 and 2013, Plaintiff responded, "[j]ust like maybe I could wash the dishes for like five or ten minutes, that's it." AR 1799. It is not clear whether "that's it" was related to the amount of time she was able to wash dishes or the types of chores she was able to perform. However, she later confirmed that she was also able to vacuum. AR 1808–09.

similarly testified that she could not prepare meals "now," i.e., at the time of the 2023 ALJ Hearing. AR 1799. These statements are not inconsistent with her reported abilities in late 2013, the date of the Exertional Questionnaire.

In sum, considering the additional evidence and full context of Plaintiff's reports in the Exertional Questionnaire and her testimony at the time of the 2023 ALJ Hearing, the Court sees no inconsistency between the two. Instead, the ALJ's selective consideration of the Exertional Questionnaire and failure to consider important context suggested inconsistencies where none existed. Accordingly, the Court finds that the ALJ failed to provide convincing reasons for rejecting Plaintiff's testimony based on the Exertional Questionnaire, and thus the ALJ's rejection is not supported by substantial evidence. *See Garrison*, 759 F.3d at 1016 (finding that the ALJ's selective presentation of daily activities was erroneous for failing to note plaintiff had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain).

*b. ALJ Hearings*

The ALJ also discounted Plaintiff's testimony at the 2023 ALJ Hearing based on alleged inconsistencies with her testimony at the 2016 ALJ Hearing. AR 1769.

First, the ALJ noted that Plaintiff testified that she had difficulty reaching past shoulder level. AR 1769, 1796. The ALJ determined that this statement was inconsistent with Plaintiff's testimony at the 2016 ALJ Hearing where she "described her ability to reach overhead as being limited 'a little bit.'" AR 1769. However, this is not an accurate description of Plaintiff's prior testimony. The following is the relevant exchange between Plaintiff and the ALJ during the 2016 ALJ Hearing:

> Q: Are you able to reach overhead with your arms?
> A: Ow.
> Q: You don't have to do it now.
> A: Oh.
> Q: I'm just asking, are you --
> A: A little bit, yeah.
> Q: Are you able to? Okay. Well, I -- meaning what you're showing me, your --
> A: Ow.

Q: -- upper arm didn't get above the horizontal . . . .

AR 118–19. This exchange, when considered in its entirety, shows that in 2016, Plaintiff's ability to reach overhead was limited to the point that she could not raise her arm "above the horizontal," i.e., shoulder level. *See* AR 118–19. Thus, like in 2023, Plaintiff could not raise her arms above shoulder level. *See* AR 1796. As such, when considering the full context of Plaintiff's prior testimony, the Court finds no inconsistency between Plaintiff's testimony from the 2023 ALJ Hearing and the 2016 ALJ Hearing.

The ALJ also highlighted Plaintiff's testimony that she could not use her left hand for gross handling for two-thirds of the workday and could not engage in handling and fingering for two-thirds of the workday. AR 1769, 1803–04. The ALJ determined that this statement was inconsistent with Plaintiff's testimony at the 2016 ALJ Hearing that "she could reach up to a shelf or into the closet to get something." AR 1769; *see also* AR 119. The ALJ fails to provide any explanation demonstrating why or how the two statements are inconsistent. In the absence of such an explanation, it is not clear to the Court why such a comparison is even appropriate, e.g., how does the ability to reach for something in a closet relate to an inability to work with her hands for two-thirds of the workday. *See* AR 1769. Considering the ALJ's lack of detail or explanation, the Court finds that the ALJ's stated reasons for rejecting Plaintiff's testimony are not specific, clear, and convincing. *See Lambert*, 980 F.3d at 1277–78 (the ALJ must "identify what parts of the claimant's testimony were not credible and why").

In short, the ALJ failed to explain his findings and consider significant, relevant evidence. Accordingly, the ALJ's rejection of Plaintiff's subjective testimony is not supported by substantial evidence. *See Regennitter v. Commissioner*, 166 F.3d 1294, 1297, 1300 (9th Cir. 1999) (reversing the Commissioner's denial of plaintiff's application based, in part, on the ALJ's inaccurate characterization of evidence); *see also Burbano v. Colvin*, No. 8:15-CV-01108-GJS, 2016 U.S. Dist. LEXIS 70885, at *13 (C.D. Cal. May 31, 2016) (finding that "the ALJ's reasons are not convincing, as they rest on an incomplete and unfair construction of Plaintiff's statements in the record.").

*c. Evidence of Recovery*

Lastly, Plaintiff raises arguments concerning evidence of recovery because it is not "clear whether the ALJ relied on [Plaintiff's] recovery as a basis for rejecting [her] statements" regarding her symptoms. ECF No. 11 at 12. To the extent the ALJ did so, Plaintiff argues that this evidence does not "invalidate" Plaintiff's testimony because improvement does not mean that Plaintiff's "impairment no longer seriously affects [her] ability to function in a workplace." ECF No. 11 at 12. Defendant argues that the ALJ reasonably concluded that the objective medical evidence showing improvement undermined Plaintiff's subjective complaints. ECF No. 15 at 4–5.

Here, the ALJ does appear to rely on evidence of recovery to support his decision to reject Plaintiff's testimony. Specifically, the ALJ finds that the "objective medical evidence shows that after being discharged from the Magnolia Special Care Center, [Plaintiff] made a significant recovery in her medical condition." AR 1768. The ALJ references x-rays from June 2012 showing moderate or early healing in various areas as well as x-rays from July 2013 showing that Plaintiff's fractures were fully healed. *Id.* He also cites physical therapy, noting that Plaintiff was independent in a home exercise program. *Id.* Lastly, the ALJ relies on Dr. Close's opinion which indicated significant recovery such as (1) being able to stand and walk but with a slight antalgic gait referable to the left leg, (2) some spasm in the cervical spine but normal range of motion, (3) normal range of motion in the hips, knees, and ankles, bilaterally, (4) mild reduction in flexion in the left shoulder but normal range of motion in abduction and lateral rotation, (5) slight reduction in flexion in the right shoulder but normal range of motion in abduction and lateral rotation, and (6) normal range of motion bilaterally in the elbows, wrists, and fingers. *Id.*

While this recitation of evidence may be a basis for rejecting Plaintiff's testimony, it is unclear what testimony is at issue. AR 1767. In reciting the evidence of recovery, the ALJ fails to specifically identify which of Plaintiff's statements this evidence contradicts and hence what testimony is not credible. *See* AR 1768; *see also Treichler*, 775 F.3d at 1103 ("The ALJ must identify the testimony that was not credible, and specify what

evidence undermines the claimant's complaints.") (citation modified). Accordingly, the Court finds that the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony based on evidence of recovery, and thus the ALJ's determination is not supported by substantial evidence. *Brown-Hunter*, 806 F.3d at 494 (finding legal error where the ALJ failed to identify the testimony they found not credible and did not link that testimony to the particular parts of the record supporting the non-credibility determination).

3. Harmless Error

An error is harmless if "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court's focus is on "whether the error impacted the validity of the ALJ's decision." *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The purported inconsistencies noted by the ALJ either do not exist or are not sufficiently explained to allow for judicial review. *See Lambert*, 980 F.3d at 1278 (when an ALJ does not provide sufficient reasoning for the court to "meaningfully determine whether the ALJ's conclusions were supported by substantial evidence," the court cannot treat the error as harmless). If the ALJ had properly evaluated Plaintiff's subjective testimony regarding her functional limitations, Plaintiff's RFC assessment could have included further limitations. *See Mariah R.L. v. Bisignano*, No. 3:25-CV-1424-GPC-MMP, 2026 U.S. Dist. LEXIS 115884, at *49 (S.D. Cal. May 26, 2026) (finding that the ALJ's credibility assessment of Plaintiff's testimony lacked substantial evidence and that the error was not harmless because it impacted the RFC).

In turn, further limitations would have impacted the VE's testimony and his analysis regarding available jobs in the national economy that Plaintiff could perform. *See* AR 1814–19 (answering hypothetical questions based on Plaintiff's limitations and identifying jobs in national economy available to Plaintiff); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("Hypothetical questions posed to a VE must set out all the limitations and restrictions of the particular claimant. If an ALJ's hypothetical

does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (citation modified). Indeed, the VE testified that an individual with Plaintiff's RFC who was also limited to "occasional handling, fingering, and reaching" would not allow for the performance of any work activity because "the greater majority of sedentary jobs require frequent bilateral reach and/or finger." AR 1819. Therefore, the ALJ's error in rejecting Plaintiff's testimony was not harmless.

**B. <u>Medical Opinions</u>**

1. <u>Legal Standards Regarding Medical Opinions</u>

Because Plaintiff applied for disability insurance benefits before March 27, 2017, 20 C.F.R. § 404.1527 applies to her claim. *See* 20 C.F.R. § 404.1527 (regulation only applicable to claims filed before March 27, 2017); *see also Woods v. Kijakazi*, 32 F.4th 785, 789–792 (9th Cir. 2022) (explaining the differences between the old and new standards for evaluating medical opinions). Section 404.1527 sets forth rules for evaluating opinion evidence. It requires that the ALJ give more weight to the medical opinions of treating sources and a source who examined a claimant, e.g., a treating physician, versus a medical source who has not examined a claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)–(2). "While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an uncontroverted opinion of a treating physician only for clear and convincing reasons." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). And if the treating physician's opinion is contradicted by another physician, "the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.*

*a. Opinion of Russell Edwards, M.D.*

Plaintiff alleges that the ALJ erred in rejecting the findings of Dr. Edwards, Plaintiff's treating physician. AR 1771. Defendant argues that because Dr. Edwards' opinion is not related to the symptoms Plaintiff experienced before December 31, 2013, the date last insured, the ALJ did not err in discrediting the opinion. ECF No. 15 at 7–8.

Dr. Edwards treated Plaintiff twice, on October 22, 2014 and March 3, 2015, and opined that Plaintiff (1) can only occasionally perform work that requires near acuity, far acuity, or color vision, (2) can only rarely perform work that required depth, accomodation, or field of vision, and (3) cannot see hazards or work with small objects. AR 924–25, 1771. The ALJ attributed "little weight" to this opinion because Dr. Edwards "saw [Plaintiff] only twice" and both examinations "were well-after the date last insured." AR 1771. The ALJ provided no other reasons or further explanation for assigning little weight to Dr. Edwards' opinion. *See id.* Nor did the ALJ find or note that the opinion of any another physician contradicted Dr. Edwards' opinion. *Id.* As such, because Dr. Edwards is a treating physician, the ALJ could discount his opinion only for "clear and convincing" reasons. *See Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *see also* AR 1771 (refering to Dr. Edwards as a "[t]reating physician").

The Court finds that the reasons articulated by the ALJ are neither clear nor convincing. First, it is unclear why the number of examinations is significant here. *See* AR 1771. While limited observations might be a basis to discount Dr. Edwards' opinion, the ALJ fails to articulate why or how Dr. Edwards' examinations are "limited" (beyond the number of examinations). *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (Failing to "consider factors such as length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion . . . constitutes reversible legal error.") (citation modified). Additionally, without futher explanation, it is unclear why two examinations specifically merits assigning "little weight" to Dr. Edwards' opinion. AR 1771.

Second, the fact that Dr. Edwards' examinations occurred "after the date of the last insured," *without more*, cannot be a basis for rejecting Dr. Edwards' opinion. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("Medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition.") (citation modified) (quoting *Lester*, 81 F.3d at 832); *see also Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975) ("Although the medical observations

discussed in [the rejected medical] reports were made after the relevant period for disability under the Social Security Act, they are nonetheless relevant . . . ."). The Commissioner suggests that the ALJ properly discounted Dr. Edwards' opinion because the opinion *was not related to Plaintiff's symptoms* before the date last insured. ECF No. 15 at 7–8. However, the ALJ draws no connection between Plaintiff's symptoms and "the date last insured," and in fact, makes no reference to whether or how Dr. Edwards' opinion relates to Plaintiff's symptoms. *See* AR 1771. The Court cannot affirm the Commissioner's decision based on findings not stated by the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("Although we can affirm the judgment of a district court on any ground supported by the record, . . . we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.") (citation modified); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."). Therefore, the Court is not persuaded by Defendant's argument.

In short, without further analysis, the ALJ's decision to assign "little weight" to Dr. Edwards' opinion is not supported by clear and convincing reasons and as such, the ALJ erred in discounting Dr. Edwards' opinion.

*b. Opinion of Frederick Close, M.D.*

Plaintiff contends that the ALJ similarly erred in rejecting the opinion of Dr. Close, an orthopedic physician and consultative examiner who examined Plaintiff before the date last insured. ECF No. 11 at 17–18. The Court disagrees because the ALJ *did not* reject Dr. Close's opinion as Plaintiff suggests.

Dr. Close opined that Plaintiff is "limited to only occasional use of the right arm at or above shoulder." AR 1770. In turn, the ALJ concluded that "claimant needs limitations on *both* upper extremities for reaching, not just the right upper extremity as opined by Dr. Close." AR 1771 (emphasis added). Plaintiff acknowledges that the ALJ assessed "greater limitations than what Dr. Close had assessed," but faults the ALJ for purportedly assessing Plaintiff as able to "reach in all directions frequently rather than occasionally without any explanation." ECF No. 11 at 17.

Except the ALJ did not find that Plaintiff could "reach in all directions." Instead, the ALJ assessed Plaintiff as follows: "can only occasionally reach overhead with bilateral upper extremities, but frequently reaching all *other* directions with bilateral upper extremities." AR 1765–66 (emphasis added). In other words, the ALJ did not state that Plaintiff could frequently reach overhead or in "all directions" as Plaintiff suggests. ECF No. 11 at 17. Moreover, the Court notes that Dr. Close also opined that Plaintiff has "no limitations in reaching, handling, feeling, grasping, and fingering at waist level." AR 1770. Thus, when considered in full, the ALJ's limitation is both consistent and more restrictive than the limitations assessed by Dr. Close regarding Plaintiff's bilateral upper extremities. Accordingly, the Court finds no error with respect to Dr. Close's opinions.

2. Harmless Error

The ALJ's error in improperly evaluating Dr. Edwards' opinion was not harmless because it was not "inconsequential" to the ultimate disability determination. *Stout*, 454 F.3d at 1055. If the ALJ had credited Dr. Edwards' opinion regarding Plaintiff's visual impairments, Plaintiff's RFC assessment could have included further limitations and thus impacted the VE's testimony and his analysis of available jobs in the national economy that Plaintiff could perform. *See* AR 1814–19 (answering hypothetical questions based on Plaintiff's limitations and identifying jobs in national economy available to Plaintiff); *see also Bray*, 554 F.3d at 1228. Indeed, the VE testified that an individual with Plaintiff's RFC who was also "limited to near acuity only occasionally" would be precluded from doing past relevant work and any other work. AR 1819. As such, the ALJ's rejection of Dr. Edwards' opinion was not harmless.

**C. Remedy**

As a remedy, Plaintiff requests that the Court remand for an award of benefits or, alternatively, for a new hearing. ECF No. 11 at 18–19. Because questions remain regarding Plaintiff's credibility, the Court finds that further administrative proceedings are necessary. *See Treichler*, 775 F.3d at 1105–06 (finding that appropriate remedy is remand for further proceedings where questions exist concerning inconsistencies between the record and a

claimant's testimony). Accordingly, the appropriate remedy is to remand for further administrative proceedings consistent with this Order.

## V. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's Final Decision be **VACATED** and **REMANDED** to the Social Security Administration for further proceedings consistent with this Report and Recommendation.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties by no later than **August 21, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by no later than **September 4, 2026**. The document should be captioned "Reply to Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Yist*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 7, 2026

Honorable Valerie E. Torres
United States Magistrate Judge